[823 NE2d 1271, 790 NYS2d 625]

ANNE INDEMINI, Appellant, v BETH ISRAEL MEDICAL CENTER, Respondent.

Argued January 5, 2005; decided February 10, 2005

### POINTS OF COUNSEL

*Carabba Locke LLP,* New York City (*Steven I. Locke* of counsel), for appellant. I. As a medical resident, Dr. Indemini is entitled to bring her breach of contract claims to court in the first instance without Public Health Council review. (*Guggenheimer v Ginzburg,* 43 NY2d 268; *Foley v D'Agostino,* 21 AD2d 60; *Grand Realty Co. v City of White Plains,* 125 AD2d 639; *Sanders v Winship,* 57 NY2d 391; *Datlof v Turetsky,* 111 AD2d 364; *Antonoff v Maimonides Med. Ctr.,* 251 AD2d 522; *Jabbour v Albany Med. Ctr.,* 237 AD2d 787; *Mihalakis v Cabrini Med. Ctr. [CMC],* 151 AD2d 345; *Matter of Salour v Glass,* 180 Misc 2d 982; *Easaw v St. Barnabas Hosp.,* 142 Misc 2d 480.) II. Dr. Indemini's claims are also not barred at the pleading stage because an educational institution's termination decisions may be entitled to some modicum of deference. (*Matter of Olsson v Board of Higher Educ.,* 49 NY2d 408; *Antonoff v Maimonides Med. Ctr.,* 251 AD2d 522; *Mihalakis v Cabrini Med. Ctr. [CMC],* 151 AD2d 345.)

*Kornstein Veisz Wexler & Pollard, LLP,* New York City (*Mark Platt* and *Marvin Wexler* of counsel), for respondent. I. The courts below correctly held that appellant's failure to exhaust her Public Health Law remedies deprived the court of subject matter jurisdiction over appellant's claims. (*Gelbard v Genesee Hosp.,* 87 NY2d 691; *Matter of Cohoes Mem. Hosp. v Department of Health,* 48 NY2d 583; *Guibor v Manhattan Eye, Ear & Throat Hosp.,* 46 NY2d 736; *Solomon v Beth Israel Med. Ctr.,* 248 AD2d 118, 92 NY2d 874; *Antonoff v Maimonides Med. Ctr. [CMC],* 251 AD2d 522; *Jabbour v Albany Med. Ctr.,* 237 AD2d 787; *Matter of Salour v Glass,* 180 Misc 2d 982; *Bhard-Waj v United Health Servs., Hosps.,* 303 AD2d 824; *Matter of Ordway,* 196 NY 95; *Interfaith Med. Ctr. v Sabiston,* 136 AD2d 238.) II. Because New York common law requires courts in this context to defer, the trial court properly dismissed appellant's claims for this reason as well. (*Moallem v Jamaica Hosp.,* 264 AD2d 621; *Harris v Eisenberg,* 199 AD2d 305; *Matter of Olsson v Board of Higher Educ.,* 49 NY2d 408; *Matter of Susan M. v New York Law School,* 76 NY2d 241; *Matter of Patti Ann H. v New York Med. Coll.,* 58 NY2d 734; *Moukarzel v Montefiore Med. Ctr.,* 235 AD2d 239;

*Board of Curators of Univ. of Mo. v Horowitz,* 435 US 78; *Antonoff v Maimonides Med. Ctr.,* 251 AD2d 522; *Mihalakis v Cabrini Med. Ctr. [CMC],* 151 AD2d 345.) III. Because the indisputable record of the review proceedings shows that appellant received a procedurally fair hearing and that there was some reasonable basis for the hospital's decision, the federal Health Care Quality Improvement Act also bars appellant's claims. (*Bryan v James E. Holmes Regional Med. Ctr.,* 33 F3d 1318, 514 US 1019; *Gelbard v Genesee Hosp.,* 255 AD2d 882; *Mathews v Lancaster Gen. Hosp.,* 87 F3d 624; *Austin v McNamara,* 979 F2d 728; *Smith v Ricks,* 31 F3d 1478; *Monroe v AMI Hosps. of Tex., Inc.,* 877 F Supp 1022; *Imperial v Suburban Hosp. Assn., Inc.,* 37 F3d 1026.)

*Wilson, Elser, Moskowitz, Edelman & Dicker LLP,* Albany (*Darrell E. Jeffers* and *Jason M. LaFlam* of counsel), for Healthcare Association of New York State, amicus curiae. I. Prior to seeking judicial review for the termination of hospital privileges, a physician participating in a residency program must first seek review by the Public Health Council. (*Guibor v Manhattan Eye, Ear & Throat Hosp.,* 46 NY2d 736; *Gelbard v Genesee Hosp.,* 211 AD2d 159, 87 NY2d 691; *Antonoff v Maimonides Med. Ctr.,* 251 AD2d 522; *Jabbour v Albany Med. Ctr.,* 237 AD2d 787; *Mihalakis v Cabrini Med. Ctr. [CMC],* 151 AD2d 345; *Easaw v St. Barnabas Hosp.,* 142 Misc 2d 480.) II. Academic teaching hospitals should be afforded a high level of deference for adverse actions taken against physicians participating in residency programs. (*Fried v Straussman,* 41 NY2d 376; *Maltz v New York Univ. Med. Ctr.,* 121 AD2d 323; *Matter of Susan M. v New York Law School,* 76 NY2d 241; *Auguste v New York Hosp. Med. Ctr.,* 260 AD2d 589; *Moukarzel v Montefiore Med. Ctr.,* 235 AD2d 239.)

## OPINION OF THE COURT

READ, J.

On December 7, 1999, the Department of Emergency Medicine at defendant Beth Israel Medical Center terminated plaintiff Anne Indemini from her position as a second-year medical resident. The Department took this action "[b]ased on [plaintiff's] disciplinary history, and on [an] incident of inappropriate and disruptive conduct, insubordination, poor judgement and poor performance while on probation." Plaintiff grieved the Department's decision to the Medical Center's House Staff Grievance Committee, which determined on May 19, 2000, that "the evi-

dence produced by the Department fully justifie[d]" the termination, and that there was "no evidence to support the conclusion that the reasons given by the Department for its actions were pretextual," as plaintiff had argued. On July 5, 2000, the Medical Center's Review Committee recommended that the Medical Center's Board of Trustees uphold plaintiff's termination; on July 26, 2000, the Board voted unanimously to accept the Review Committee's recommendation.

On April 20, 2001, plaintiff commenced this breach of contract action, alleging that the Medical Center had wrongfully terminated her residency because of her advocacy for the rights of staff members and her union organizing activities. Plaintiff sought declaratory relief; reinstatement and/or future damages; compensatory damages; and expurgation of the Medical Center's records to delete any references to personnel actions taken against her. Upon the Medical Center's motion, Supreme Court dismissed the complaint for lack of subject matter jurisdiction because plaintiff had not exhausted her administrative remedies under article 28 of the Public Health Law. The Appellate Division affirmed (309 AD2d 651 [1st Dept 2003]), as do we.

Section 2801-b (1) of the Public Health Law provides in relevant part that

> "[i]t shall be an improper practice for the governing body of a hospital to refuse to act upon an application for staff membership or professional privileges or to deny or withhold from a physician . . . staff membership or professional privileges in a hospital, or to exclude or expel a physician . . . from staff membership in a hospital or curtail, terminate or diminish in any way a physician's . . . professional privileges in a hospital, without stating the reasons therefor, or if the reasons stated are unrelated to standards of patient care, patient welfare, the objectives of the institution or the character or competency of the applicant."

A party aggrieved by an improper practice may file a complaint with the Public Health Council (PHC) (Public Health Law § 2801-b [2]), which must promptly conduct a confidential investigation (Public Health Law § 2801-b [3]). The PHC is composed of the Commissioner of Health and 14 members appointed by the Governor with the advice and consent of the Senate (Public Health Law § 220). If the PHC determines that cause exists to credit the complaint's allegations, it must

promptly so advise the governing body of the hospital against which the complaint was lodged, and direct the hospital to review its actions (Public Health Law § 2801-b [3]). The provisions of section 2801-b do not "impair or affect any other right or remedy" that a physician may have (Public Health Law § 2801-b [4]). Supreme Court may enjoin violations or threatened violations of article 28, and any finding made by the PHC or the Commissioner or a hearing officer "shall be prima facie evidence of the fact or facts found therein" (Public Health Law § 2801-c).

By its terms, section 2801-b applies to plaintiff because she is a "physician" who has been denied "professional privileges" by the Medical Center. A medical resident is undoubtedly a physician (*see* Merriam-Webster's Collegiate Dictionary 996 [10th ed 1998] [defining "resident" as, among other things, "a physician serving a residency"]). Further, the Medical Center's adverse decision regarding plaintiff's fitness to continue in its residency program "curtail[s], terminate[s] or diminish[es]" the "professional privileges" extended to her by virtue of the Medical Center's postgraduate medical education program in emergency medicine and/or the Resident Agreement.

Public Health Law § 2801-b was originally enacted to create an avenue of redress for physicians whom hospitals discriminated against or unjustly denied staff membership or professional privileges; however, as Supreme Court below observed, "the statute gives no indication that the Legislature intended Residents, who perform medical duties under the direction of licensed physicians, to have greater access to the courts than physicians." Thus, reading section 2801-b to exclude from its reach those physicians who are residents is unsupported by the statute's language and disserves the "dual purpose" of threshold PHC review—to "allow[ ] an expert body to initially review the physician's complaint and [ ] promot[e] prelitigation resolution" (*Gelbard v Genesee Hosp.*, 87 NY2d 691, 696 [1996]; *see also Mason v Central Suffolk Hosp.*, 3 NY3d 343 [2004]).

Plaintiff argues that PHC review would be redundant in her case because she has already exhausted the internal grievance procedure that the Accreditation Council for Graduate Medical Education mandates teaching hospitals to follow. The medical staff privileges of the plaintiff physician in *Gelbard*, however, also were terminated only after he had exhausted the defendant hospital's internal hearing and review procedure. Article 28 provides for review by a government panel of medical profes-

sionals having no connection whatsoever to the hospital whose actions are being questioned. The availability of this impartial forum "with vast experience and unparalleled expertise in these cases" (*Gelbard*, 87 NY2d at 697) not only affords a terminated physician an additional level of professional scrutiny, but also serves to protect the hospital by eliminating any hint of institutional bias. As we observed in *Matter of Cohoes Mem. Hosp. v Department of Health of State of N.Y.* (48 NY2d 583, 589 [1979]):

> "[T]he legislature, by enacting section 2801-b of the Public Health Law, intended to provide the physician and the hospital with a professionally competent forum in which to resolve their disputes in an effort to avoid litigation, if possible. . . . [The PHC] us[es] its professional expertise to identify and discourage groundless claims, to mediate and to conciliate disputes between health-care professionals, and to offer the court some aid in resolving such disputes, should the parties fail to come to an agreement on their own."

Plaintiff also protests that the Appellate Divisions are split over whether an aggrieved resident must exhaust administrative remedies under section 2801-b, pointing to the Second Department's decision in *Antonoff v Maimonides Med. Ctr.* (251 AD2d 522 [1998] [plaintiff resident who claimed that he was coerced into resigning after being accused of sexually harassing a patient alleged breach of contract sufficiently to withstand motion to dismiss]), and the Third Department's decision in *Jabbour v Albany Med. Ctr.* (237 AD2d 787 [1997] [male plaintiff resident terminated for allegedly conducting an inappropriate medical examination of a female patient raised a material issue of fact sufficient to defeat summary judgment on his cause of action for breach of contract]).

Both of these cases, however, involved a resident's termination based solely on allegations of sexual misconduct; neither the Second nor the Third Department considered, much less decided, whether section 2801-b applies in this context because the issue was not raised. They certainly did not decide that section 2801-b is inapplicable to those physicians who are residents. In our view, a medical resident's "proper recourse for challenging [ ] termination from [a hospital] residency program is the grievance process set out in Public Health Law § 2801-b, which cannot be avoided 'simply by asserting a breach of contract

claim' " (*see Solomon v Beth Israel Med. Ctr.*, 248 AD2d 118 [1st Dept 1998], *lv denied* 92 NY2d 874 [1998], quoting *Gelbard* at 697). Whether there is an exemption from PHC review when a physician's staff membership or professional privileges are denied, curtailed or terminated solely because of alleged sexual harassment or misconduct directed at a patient is another question for another day.

Accordingly, the order of the Appellate Division should be affirmed, with costs.

Chief Judge KAYE and Judges G.B. SMITH, CIPARICK, ROSENBLATT and GRAFFEO concur; Judge R.S. SMITH taking no part.

Order affirmed, with costs.