OPINION OF THE COURT
Judith J. Gische, J.
*360 Defendants move, preanswer, to dismiss plaintiffs complaint for wrongful termination/breach of contract, breach of the implied covenant of fair dealing and tortious interference with contract. Plaintiff opposes the motion in all respects.
Background and Factual Allegations
The court accepts plaintiffs factual allegations as true for the purpose of this motion. (Morone v Morone, 50 NY2d 481 [1980]; Beattie v Brown & Wood, 243 AD2d 395 [1st Dept 1997].) The primaiy issue raised is whether the court has subject matter jurisdiction over the parties’ dispute or whether plaintiff must first exhaust certain administrative remedies under the Public Health Law that are available to medical doctors.
In deciding defendants’ motion, the court considers the following alleged facts:
On January 30, 2003, plaintiff, a medical doctor, entered into an employment contract with defendant Beth Israel Medical Center, also known as Beth Israel Medical Center Foundation, Inc. for employment as a hospitalist and attending physician in the neurosurgery department. Plaintiff began working at the hospital on the effective date of the contract (Mar. 3, 2003), but resigned on April 16, 2003. He contends his resignation was forced and demanded by Dr. Fink who told him he would be “fired,” and his termination reported to the National Practitioner Data Bank (NPDB) if he did not comply. The NPDB collects information about adverse actions involving health care practitioners.
Notwithstanding the foregoing, defendant Judith Block, a divisional risk manager for the hospital, filed a report about plaintiff with the NPDB on May 23, 2003. She reported that plaintiff had been asked to resign and his clinical privileges terminated “due to substandard or inadequate care” provided by plaintiff and “because of serious problems with his job performance including failure to communicate with other staff regarding] patient care plans and followup, providing unreliable information] re [gar ding] patients to other staff, unsound medical judgment and leaving work early.”
Plaintiff wrote to the hospital on June 3, 2003 demanding that the hospital remove the entry. The hospital responded by letter dated June 13, 2003 as follows:
“At the time of your resignation, the credentialing process was not complete and your appointment to the Medical Staff was pending. However, as a hospitalist, even had you received an appointment to the *361 Medical Staff, such appointment would automatically end with termination of employment. Under these circumstances, the Medical Staff By-Laws do not give you the right to a hearing with respect to termination of your position. We will forward a copy of the Medical Staff By-Laws to you should you so request.
“As you were informed, there were quality issues in the care you rendered that led to the request for your resignation. These are documented in your QI [quality improvement] file. You were offered the opportunity to resign in lieu of termination and you did submit a letter of resignation. I am satisfied that the request for your resignation was justified.
“We are obligated by law to report to the National Practitioner Data Bank terminations and resignations of physicians under investigation relating to professional incompetence. We will however clarify to the Data Bank that at the time of your resignation you did not have recourse to a hearing or other form of due process . . . .”
Plaintiff alleges that although he was ready to perform under the contract, the hospital wrongfully and without cause discharged plaintiff and refused to let him serve as agreed under the contract (first cause of action). He further alleges his contract included an implied covenant of good faith and fair dealing, which the hospital breached (second cause of action). His third and fourth causes of action assert claims that Dr. Sen and Ms. Block induced the hospital to breach the contract. Plaintiffs fifth and sixth causes of action are that Dr. Sen and Ms. Block tortiously interfered with the contract. In support of the third, fourth, fifth and sixth causes of action against the named individual defendants, plaintiff states that Dr. Sen is the chairman of his department, and that Dr. Sen disliked him on a personal level having nothing to do with his (plaintiffs) abilities. Plaintiff claims Ms. Block acted outside the scope of her employment by inducing the hospital to breach the contract, and by reporting him to the NPDB.
Defendants contend that, because this dispute arises from plaintiffs termination by the hospital, he must first exhaust the administrative remedies found within Public Health Law §§ 2801-b and 2801-c. Having failed to first pursue such administrative remedies, defendants argue, deprives this court of subject matter jurisdiction. Defendants contend that the administrative *362 grievance process must be followed regardless of whether plaintiff seeks only monetary damages or some other remedy as well. (Indemini v Beth Israel Med. Ctr., 4 NY3d 63 [2005]; Moallem v Jamaica Hosp., 264 AD2d 621 [1st Dept 1999].)
Plaintiff argues that his claims are not subject to the administrative remedies of the Public Health Law (§ 2801-b) for three reasons. First, because the contract contains a clause requiring all disputes under the contract to be brought in the courts in the State and County of New York. Next, plaintiff contends that, because he was not terminated by the governing body of the hospital, but forced to resign by his direct supervisor, Public Health Law § 2801-c does not apply, because there is no “improper practice” to challenge at an administrative hearing. Finally, plaintiff contends that there are two aspects to the contract: his hospital privileges and his right to remuneration. While he acknowledges that any dispute about hospital privileges would have to be resolved administratively, he argues that disputes about money damages alone cannot be resolved by the administrative agency and needs to be brought to court.
Discussion
Section 2801-b (1) of the Public Health Law provides in relevant part:
“It shall be an improper practice for the governing body of a hospital to refuse to act upon an application for staff membership or professional privileges or to deny or withhold from a physician . . . staff membership or professional privileges in a hospital or to exclude or expel a physician . . . from staff membership in a hospital or curtail, terminate or diminish in any way a physician’s . . . privileges in a hospital, without stating the reasons therefor, or if the reasons are unrelated to standards of patient care, patient welfare, the objectives of the institution or the character or competency of the applicant.”
If the governing body of the hospital engages in an improper practice, as that term is statutorily defined, then an aggrieved physician can file a complaint with the Public Health Council, which must promptly conduct a confidential investigation. (Public Health Law § 2801-b [2], [3].)
In enacting Public Health Law § 2801-b, the Legislature intended to provide physicians and hospitals with a forum for *363 their disputes, discourage groundless claims, and to offer the courts some aid in resolving such disputes, where parties fail to reach agreement. (Matter of Cohoes Mem. Hosp. v Department of Health of State of N.Y., 48 NY2d 583, 589 [1979].) Therefore, the protections of Public Health Law § 2801-b are a two-way street for the protection of both the physician and the public. (Gelbard v Genesee Hosp., 211 AD2d 159, 161 [1995], affd 87 NY2d 691 [1996].)
The statute itself, however, provides that the remedies under Public Health Law § 2801-b do not “impair or affect any other right or remedy” that a physician may have. (Public Health Law § 2801-b [4].) Notwithstanding such statutory reservation, the Court of Appeals has held that, at least in some circumstances, the administrative remedy must be invoked before a physician can seek recourse in the courts. (Indemini v Beth Israel Med. Ctr., 4 NY3d 63 [2005].)
Defendants essentially argue that the Court of Appeals decision in Indemini means that all disputes between the governing body of a hospital and a physician emanating from a termination must be vetted through the administrative process, including ordinary contract disputes. Defendants rely upon dicta in Indemini that a physician cannot circumvent the administrative procedures specified in Public Health Law § 2801-b by bringing a breach of contract action. Indemini, however, involved not only a claim of breach of contract but also “reinstatement” and “expurgation of the Medical Center’s records to delete any reference to personnel actions taken against [plaintiff].” (Indemini, supra at 66.)
Reinstatement necessarily carries with it reinstatement of hospital staff membership and/or hospital privileges, the very rights that Public Health Law § 2801-b addresses. Thus, while a physician cannot cloak remedies like reinstatement under the guise of breach of contract, Indemini does not stand for the legal principle that a pure breach of contract action, seeking only monetary damages, must go through the statutorily created administrative process for hospital staff and privilege grievances. Indeed, defendants’ broad reading of Indemini would completely eviscerate the statutory language which expressly provides that the administrative remedies are not a physician’s sole remedy in termination disputes. Albeit in a different context, the Court of Appeals in Indemini expressly left open the issue of whether there are circumstances when administrative review is not required before proceeding to court.
*364 In this court’s view and based upon the statutory language, whether the dispute should first be heard administratively (by the Public Health Council), or in the courts, turns on whether the dispute is about the doctor’s competency or ethics to continue to practice, and the kind of relief the aggrieved physician seeks. (Gelbard v Genesee Hosp., 211 AD2d 159, 161 [4th Dept 1995], affd 87 NY2d 691 [1996].) Where the physician seeks to continue and/or establish staff membership or hospital privileges, then proceeding before the Public Health Council before any court action is commenced is appropriate. The Public Health Law specifically relates to issues of staff membership and hospital privileges. Where, however, no such staff membership or hospital privileges are sought, then a physician should be free to pursue his/her other rights or remedies, including direct access to court proceedings.
In this case plaintiff does not seek reinstatement to his former job, but only monetary damages for breach of an employment contract. (Mason v Central Suffolk Hosp., 3 NY3d 343 [2004].) Thus, while the proper recourse for challenging termination with a view toward reinstatement would have been the grievance process set out in Public Health Law § 2801-b (Indemini v Beth Israel Med. Ctr., supra at 68), where, as here, the physician is not complaining about the decision to terminate, or seeking reinstatement, but only monetary damages under the contract, the dispute may be heard in the courts in the first instance. (Mason v Central Suffolk Hosp., supra at 347-348; see also, Mahmud v Bon Secours Charity Health Sys., 289 F Supp 2d 466 [SD NY 2003].)
This result is consistent with the salutary goal of Public Health Law § 2801-b to protect physicians and the public. (Gelbard v Genesee Hosp., 211 AD2d 159, 161 [4th Dept 1995], affd 87 NY2d 691 [1996].) It is also consistent with Public Health Law § 2801-b not being the sole or exclusive remedy for a terminated physician. (Public Health Law § 2801-b [4].) Defendants’ motion to dismiss the complaint on the basis that the court does not have subject matter jurisdiction over this lawsuit is, therefore, denied. Having so decided, the court need not further address plaintiffs other claims about whether the ultimatum about his resignation was by a “governing body” or otherwise.
Defendants argue, alternatively, that plaintiff has pleaded redundant causes of action, and asserted causes of action against the individually named defendants without any factual claims *365 to support them. Therefore, the individual defendants seek the dismissal of the third, fourth, fifth and sixth causes of action against them. The hospital seeks the dismissal of the second cause of action against it as being redundant.
The individual claims against defendants are predicated on causes of action for tortious interference with contact. In order to establish a validly stated cause of action for tortious interference with contract, a plaintiff must allege the existence of a valid contract between plaintiff and a third party, the defendants’ intentional and unjustified procurement of the third party’s breach of contract and resulting damages. (Jim Ball Chrysler LLC v Marong Chrysler-Plymouth, Inc., 19 AD3d 1094 [4th Dept 2005].) The allegations cannot be conclusory, but must include facts sufficient to support the conclusions to be drawn. Mere conclusions that third parties cancelled contracts because of defendants’ action will not withstand a motion to dismiss. (M.J. & K. Co. v Matthew Bender & Co., 220 AD2d 488 [2d Dept 1995].)
Plaintiff alleges the existence of a valid contract between himself and the hospital. He further alleges that although Dr. Sen and Ms. Block are hospital employees, they acted outside the scope of their employment in procuring or encouraging the hospital to repudiate the contract. (Kosson v “Algaze”, 203 AD2d 112 [1st Dept 1994], affd 84 NY2d 1019 [1995].) Plaintiff does not elaborate what either Dr. Sen or Ms. Block did to procure the breach of contract. He does not allege what either of them did that was outside the scope of their employment, or what exactly was the nature of the interference. Thus, for example, the report to the NPDB was by Ms. Block in her official capacity. There is no claim that Ms. Block acted without the hospital’s knowledge or consent when she filed the report. With respect to Dr. Sen, plaintiff avers that Dr. Sen’s personal dislike for him “rendered defendant Beth Israel’s performance of its obligations under the Contract more difficult.” This is also too vague to withstand a motion to dismiss.
After careful consideration, the court finds that the causes of action against the individual defendants fail, even according them every favorable inference. (Morone v Morone, 50 NY2d 481 [1980]; Beattie v Brown & Wood, 243 AD2d 395 [1st Dept 1997].) Therefore, the third, fourth, fifth and sixth causes of action against the individual defendants are hereby severed and dismissed.
Plaintiff acknowledges some redundancy between the first cause of action for wrongful termination/breach of contract and *366 the second cause of action for breach of the implied covenant of fair dealing. Rather than dismiss the second cause of action, the court grants defendants’ motion only to the extent of incorporating the second cause of action into the first cause of action because it is conceptually and legally encompassed anyway. Otherwise, the motion to dismiss the second cause of action is denied.
The remaining defendant shall serve its answer within 10 days from the date of this decision/order, below.
Conclusion
It is hereby ordered that defendants’ motion to dismiss this action on the basis that this court does not have subject matter jurisdiction is hereby denied; and it is further ordered that defendants’ motion to dismiss the individually named defendants from this case is hereby granted; and it is further ordered that the clerk shall enter judgment in favor of defendant Chandranath Sen, M.D. and defendant Judith Block, against plaintiff Seife M. Tsadik, M.D., also known as Seife Wolde-Tsadik, dismissing the complaint against them; and it is further ordered that the clerk shall amend the caption to delete the names of defendant Chandranath Sen, M.D. and defendant Judith Block therefrom; and it is further ordered that the court grants defendants’ motion only to the extent of incorporating the second cause of action into the first cause of action, because it is conceptually and legally encompassed with the first cause of action; otherwise, the motion to dismiss the second cause of action altogether is denied.
Any relief not expressly addressed has nonetheless been considered and is hereby denied.